IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARLENE PEREZ-MERINO | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | C. A.NO. 3:20-CV3729-S |
| | § | |
| TREND CLINICS, INC., | § | |
| | § | |
| | § | |
| DEFENDANT | § | |

SECOND AMENDED COMPLAINT

Plaintiff Arlene Perez-Merino ("Plaintiff"), for her Second Amended Complaint against

Defendant Trend Clinics, Inc. ("Defendant"), would show as follows:

I.    PARTIES AND BACKGROUND

1.    Plaintiff is an individual with substantial experience in assisting workers

compensation claimants, including federal employees with work-related injury claims under the

Federal Employee Compensation Act ("FECA"). Plaintiff has served and continues to serve

FECA claimants as an official lay representative for FECA claimants under regulations

promulgated pursuant to the FECA. Plaintiff was employed by Defendant between July 2017 and

March 2020.

2.    Defendant is a corporation which may be served with summons through its

registered agent for service of process, Ted Ventures, LLC, 621 Highlander Avenue, Midlothian,

Texas 76065.

SECOND AMENDED COMPLAINT – Page 1

3.    The United States (the "Government"), through its Department of Labor ("DOL"), and specifically the Office of Workers Compensation Programs ("OWCP") of the DOL, administers claims under the FECA. Under the FECA, certain claims against the Government are not properly payable, including claims for services of unsupervised non-licensed personnel, services other than physical therapy on a patient performed by a chiropractor under supervision of a physician and under certain conditions, and services performed by an unsupervised licensed professional counselor in training. Specifically, in regard to reimbursement for services of a chiropractor, (a) services of chiropractors other than physical therapy that may be reimbursed are limited by the FECA to treatment to correct a spinal subluxation; the costs of physical and related laboratory tests performed by or required by a chiropractor to diagnose such a subluxation are also reimbursable, (b) a diagnosis of spinal "subluxation as demonstrated by X-ray to exist" must appear in the chiropractor's report before the DOL can consider payment of a chiropractor's bill, and (c) a chiropractor may interpret his or her x-rays to the same extent as any other physician, but to be given any weight, the medical report must state that x-rays support the finding of spinal subluxation. DOL will not necessarily require submittal of the x-ray, or a report of the x-ray, but the report must be available for submittal on request. A chiropractor may also provide services in the nature of physical therapy under the direction of, and as prescribed by, a qualified physician. Defendant or one of its Principals or related entities referred to in paragraph 4, or one of the Providers referred to in paragraph 5, or one of the other related individuals or entities referred to in paragraphs 6, 7 and 8, has made claims against the Government under the FECA in violation of the False Claims Act

SECOND AMENDED COMPLAINT – Page  2

("FCA"), including based on violations of the Anti-Kickback Act ("AKA"), the Stark Act and the Travel Act.

4.    On information and belief, Enrique Stowhas, Derek Gove and Trey Austin (the "Principals") own or control Defendant, TED Ventures, LLC, Trend Physicians Group, Inc. Tritin Medical Distribution, LLC., Tritin Surgical Assist, LLC and TI Medical Holdings, LLC and various other entities.

5.    Certain individuals or entities constituting medical providers or pharmacies ("Providers") owned, controlled, or managed by one or more of Defendants and the other entities referred to in paragraph 3, purport to offer medical care to individuals substantially all of whom are claimants under the FECA. Individual Providers offer medical care individually or through certain entities owned, controlled or managed by Principals Gove and Austin, including Defendant, formerly known as WOLMED, Karen Dickerson, Patient's Choice, owned by Dr. Ara Dayian, or managed by the Principals, WellSpine, owned by Dr. Francisco Batlle, Regional Orthopedics and Sports Medical Center, owned by Dr. Robert Roye, Lancaster Hospital nka Crescent Medical Center Lancaster, owned by Raji Kumar, Blue Star, owned by Chris Green, NextGen Healthcare, owned by Hunter Jochem, Actuhealth, owned by Dr. Lashoneria Camp and formerly owned by Trownon Thomas, a licensed pharmacist and Allan Gonzales, 360 Clinics, PPC, owned by Naveed Clair, and Defendant Trend Physicians Group, Inc., operated by Gregg Podleski, Brian Rogers, and James K. Kaufman.

6.    Certain individuals and entities, including Tritin Medical Distribution, LLC. and Tritin Surgical Assist, LLC, owned and controlled by Principal Austin, and ProMed, Inc., owned by Bryan Neal, purportedly offer medical instrumentation and durable medical equipment to

SECOND AMENDED COMPLAINT – Page  3

Defendant and one or more related entities and Providers. Kym Grant also provides medical instrumentation to one or more of the Providers through an entity named Doctors Guild. Her husband is a licensed chiropractor, and she and her husband have a relationship with one or more unions representing federal employees as FECA claimants and she refers such FECA claimants to her husband without disclosing her relationship with her husband and she also refers FECA claimants to Crescent Medical Center Lancaster under circumstances in which she is compensated for such referrals.

7.      Certain individuals and entities or purported entities, including Sonar Care Management, owned, controlled or managed by the Principals, purportedly offer services to one or more other Defendants and one ore more related entities and Providers to assist their management, or provide medical management services, or in order to obtain medical instrumentation, durable medical equipment or pharmaceutical products or laboratory services to be provided FECA claimants served by Providers. Plutus Health, Inc., owned by John Thomas, purports to provide preauthorization services for patients of Providers.

8.      Certain individuals also purportedly offer billing, marketing and other services to Defendants or one or more of the Providers, including Terri Horner, Christina Morales, Carol Debord, Kristen Gilmore, Delilah Garcia, Lori Moya, Crystal Myers, Krystal Hamilton, Carson Roye, Nick Kossorow, Jeff Bob, Ashley Carter, Travis Miller, Henry Velasquez, John Merritt, Brandon Brenner, Juan Pedraza, Scott Ostrow, Gage Merritt, Scott Atwater and Sheila Bennett.

9.      During her employment by Defendant, Plaintiff engaged in protected conduct in an effort to stop one or more violations of the FCA, but was terminated and otherwise subjected to retaliation before and after her termination on account of her doing so. Specifically, Plaintiff,

SECOND AMENDED COMPLAINT – Page 4

during her employment by Defendant, believed Defendant and related individuals and entities were making false claims for payment for medical services, pharmaceuticals, medical instrumentation and durable medical equipment purportedly provided to FECA claimants, made by Providers to the Government and fiscal intermediaries of the Government for goods or services purportedly provided to FECA claimants through fraudulent billing schemes, including upcoding, false documentation in violation of the FCA and violations of the FECA, AKA, Stark Act and Travel Act. In 2019 and early 2020, Plaintiff made known her opposition to one or more of such false claims in violation of the FCA and was, in consequence of such opposition, subjected to retaliation, including interference with her performance of services as a lay representative for FECA claimants, termination of her employment and suit against her. Plaintiff was also subjected by Defendant to discrimination on the basis of disability and to retaliation by termination of her employment in violation of the Americans with Disabilities Act ("ADA") and the Texas Labor Code ("TLC").

II.     JURISDICTION AND VENUE

10.     Plaintiff asserts a first claim under Section 3730(h) of the FCA and thus has this Court accordingly has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 31 U.S.C. § 3732, as well as under 28 U.S.C. § 1345. This Court also has subject matter jurisdiction under Plaintiff's claims under the ADA under 28 U.S.C. § 1332 and supplemental jurisdiction over Plaintiff's claims under the TLC under 28 U.S.C. § 1367.

11.     Venue for this action lies under 28 U.S.C. § 1291 and 31 U.S.C. § 3732.

SECOND AMENDED COMPLAINT – Page 5

III.    FACTS

    A.    Providers and Employment of Plaintiff

12.    On information and belief, Providers were formed or acquired by Principals or other entities and individuals or are managed by Principals or other entities and individuals. The individual Providers include Dr. Edward Wolski, Dr. Andrew Garrett, a licensed chiropractor, Dr. Robert Ippolito, Dr. Douglas Beeman, a licensed chiropractor, Dr. Robert Helsten, Dr. Brian Rogers, Dr. Julian Crutchfield, a licensed chiropractor, Michael Smith, a licensed chiropractor, Chad Dugas, formerly licensed as a chiropractor and now as a licensed family nurse practitioner, David Janaway, a licensed professional counselor, Dr. Brian Rodgers, Aaron Jackson, a licensed chiropractor, Dr. Jared Ulrich, Dr. Ara Dayian, Dr. Franciso Batlle, Evelyn Garallado, a certified medical assistant, Chris Keaton, a certified medical assistant, Dr Quam Pham, Layten Revel, purporting to offer medical care or pharmaceuticals in the form of chronic pain evaluation but holding only a Ph.D. and not any license, Dr. Candace Addison, Douglas Byers, a licensed chiropractor, Dr. Kevin Kaufman, Dr. Gregg Podleski, Dr. Brian Rogers, Dr. Kevin James, Dr. Aaron Eubanks, Dr. Robert Neece, Julian Crutchfield, a licensed chiropractor, Jared Ulrich, a licensed chiropractor, Douglas Beeman, a licensed chiropractor, Quam Pham, a licensed chiropractor, Dr. Robert Roye, Dr. Pedro Laredo, Andrew Garrett, a licensed chiropractor, Dr. Danika Rasmussengeter, a licensed chiropractor, Michael Smith, a licensed chiropractor, Dr. Corey Strunk, a licensed pharmacist, Dr. Karen Dickerson, Dr. Lashoneria Camp, Trownon Thomas, a licensed pharmacist, Patty Cates, a licensed chiropractor, Dr. Robert Roye and Dr. Naveed Klair. The entity Providers include U&Me Pharmacy, LLC, a licensed pharmacy,

SECOND AMENDED COMPLAINT – Page 6

Southern Star Pharmacy 002, LLC, Southern Star Pharmacy 003, LLC and Southern Star

Pharmacy 004, LLC, each a licensed pharmacy, and Assurance Consolidated Pharmacy, LLC.

13.    Plaintiff became employed by Defendant in March 2017 as its Director of

Business Development and contemporaneously by WOLMED as its chief operating officer.

Defendant is the successor to WOLMED.

14.    During her employment between March 2017 and March 9, 2020, Plaintiff

became familiar with multiple false and fraudulent practices in violation of the FCA, the AKA,

Stark and the Travel Act carried out by the Principals and other Defendants, through one or more

of the Providers or other individuals listed above, as specified in more detail in paragraphs 15

through 44.

B.    False and Fraudulent Practices

15.    One or more of the Providers has charged the Government for unsupervised

therapy by chiropractors, unlicensed technicians and licensed professional counselors in training.

By way of example only, Crutchfield, Dugas, Smith, Garrett, Jackson, Pham, Ulrich, Addison,

Dayian, Pham, Gilmore, Wolski, Helsten, Debord and Miller, falsified billing notes stating they

patients were not actually treated under the supervision of a physician and the physicians never

saw the patients. Also by way of example only, persons without a license named Brittany

Bowman, a so-called LPC-I, or licensed professional counselor in training, and Stacy Ogden, a

so-called LPC-I, or licensed professional counselor in training, provided counseling but were

billed by Wolski and Helsten as if they provided the services. Plaintiff has the names of patients

subject to such improper charging.

SECOND AMENDED COMPLAINT – Page 7

16.     One or more of the Providers has charged the Government in amounts otherwise not legitimately charged, including chiropractors charging for two hours of physical therapy when patients received no more than 1½ hours of therapy or the physical therapy was unsupervised while the attending Provider was asleep. By way of example only, Jackson and Byers did so. Plaintiff has the names of patients subject to such improper charging.

17.     One or more of the Providers has charged for medical office visits with physicians when care was actually provided by chiropractors, licensed professional counselors in training, technicians and medical assistants. By way of example only, Crutchfield, Garrett and Dugas saw patients and referred them to surgeons. Plaintiff has the names of patients subject to such improper charging.

18.     One or more of the Providers charged for office visits under CPT code 97110, for active physical therapy, when the CPT code should have been 97140, for manual hyperbolt massage. Also, one or more of the Providers charged for office visits under code, for active physical therapy, when the CPT code should have been 97530, for therapeutic therapy. Also, one or more of the Providers charged for physician office visits under code 97213 and 97214 when the code should have been one for physical therapy not by a physician, 97110, 97140, 97530 or other physical therapy codes. By way of example only, Crutchfield, Dugas, Smith, Garrett, Jackson, Pham and Ulrich did so. Plaintiff has the names of patients subject to such improper charging.

19.     One or more of the Providers has charged for EMG diagnostic services by an unlicensed technician signed off by Wolski and Helsten without them ever seeing the patient. Plaintiff has the names of patients subject to such improper charging.

SECOND AMENDED COMPLAINT – Page 8

20.    One or more of the Providers did not sign CA-17 and CA-20 and OWCP-5 forms required by the DOL but the forms were stamped as signed by medical assistants, chiropractors, nurse practitioners, front office staff and administrative staff without the physicians seeing the patients. The use of the stamps by persons other than physicians was contrary to limitations on FECA claims. These forms improperly stamped included pharmacy scripts, office visit scripts, narrative reports, office dictation, federal government status reports (CA17's), referral scrips, FMLA documentation, government assistance documentation and responses to letters from the DOL to the treating physician. The physicians knowingly instructed their staff to use these stamps on items not prepared or reviewed by a medical physician after a visit with the patient. As a consequence, the Government was charged when it should not have been. By way of example only, Wolski, Dugas, Dickerson, Jannaway, Addison, Ippolitio, Helsten and Dan did so. Plaintiff has the names of patients subject to such improper charging.

21.    One or more of the Providers was charging for office visits under CPT code 99211 when the only event which occurred was medical assistants providing necessary paperwork to patients. By way of example only, Wolski, Helsten and Dugas did so. Plaintiff has the names of patients subject to such improper charging.

22.    One or more of the Providers opened up false claims, or induced patients to give false statements to open up such claims, with the DOL when the patient/claimant had not worked for five years or more and billed charges to the DOL notwithstanding. By way of example only, Wolski, Rogers, Garrett, Ippolito and Addison did so. This included opening new injury claims as either traumatic or repetitive for FECA claimants to maximize payment of wage substitution

SECOND AMENDED COMPLAINT – Page 9

benefits for FECA claimants when there was not a basis to do so. Plaintiff has the names of patients subject to such improper charging.

23.     One or more of the Providers who were chiropractors prepared medical necessity letters for physicians recommending surgery when the chiropractors never saw the patients. As a consequence, the Government paid for surgery related to such letters when it should not have. By way of example only, Beeman, Garrett and Cates did so. Plaintiff has the names of patients subject to such improper charging.

24.     One or more of the Providers refused to provide medical necessity letters recommending surgery unless the surgery would involve use of medical instrumentation supplied by one or more of Defendants or an individual or entity associated with them, specifically including Tritin Medical Distribution, LLC or Tritin Surgical Assist, LLC but not limited to such entities. Also, one or more Providers provided medical necessity letters recommending surgery when use of medical instrumentation supplied by Defendant or an individual or entity associated with Defendant would be used, and charged for a medical narrative under CPT codes 99203, 99204, 99213, 99214 without disclosing the reason why such letters were being provided. By way of example only, Beeman, Kaufman, Cates, Podleski, Eubanks, Ippolito, Batlle and Neece did so. Plaintiff has the names of patients subject to such improper charging.

25.     One or more of the Providers provided disability narratives for Social Security disability benefit purposes for FECA claimants when the claimants were not actually entitled to Social Security disability benefits. By way of example only, Wolski, Garrett, Beeman, Cates, Podleski, Eubanks, Ippolito, Batlle and Neece, Addison, Dan, Pham and Dugas did so. Plaintiff has the names of patients subject to such improper charging.

SECOND AMENDED COMPLAINT – Page 10

26.     One or more of the Providers constituting pharmacies consistently provided medication for which it would receive most reimbursement without regard to clinical necessity, facilitated by a practice of Defendant and one or more related entities providing to Providers substitution scripts authorizing pharmacies to substitute medications if they did not have the medications originally prescribed. Plaintiff has the names of patients subject to such improper charging.

27.     One or more of the Providers constituting pharmacies provided medication to patients even without physicians reevaluating those patients after as long as five months. Plaintiff has the names of patients subject to such improper charging.

28.     One or more of the Providers constituting pharmacies forged medical necessity letters to justify prescription of certain medications. By way of example only, Sydia Ahmed, a licensed pharmacist employee of one of the Southern Star Pharmacy, and other employees of Southern Star, and Trownon Thomas of Assurance Consolidated Pharmacy, LLC and Scott Ostrow, a pharmaceutical representative, engaged in forging of such medical necessity letters. Plaintiff has the names of patients subject to such improper charging.

29.     One or more of the Providers constituting chiropractors forged medical necessity letters to justify prescription of certain medications and one or more Providers constituting pharmacies provided such medications and charged for them. By way of example only, Cates and Dr. Beeman engaged in forging of such medical necessity letters. Plaintiff has the names of patients subject to such improper charging.

30.     On one or more of the occasions, marketers would get a 5% commission, and then later a 2% commission, of any pharmaceuticals ordered through certain Providers constituting

SECOND AMENDED COMPLAINT – Page 11

pharmacies. The marketers included Crystal Meyer, Krystal Hamilton, Carson Roye, Gage

Merritt, Juan Pedraza and Brandon Brenner. As a consequence, the marketers were inducing

Providers to use only pharmacies associated with Defendants. Plaintiff has the names of patients

subject to such improper charging.

31.    On one or more of the occasions, marketers would get a 5% commission of any

medical instrumentation and durable medical equipment ordered through certain physicians. The

marketers included Crystal Meyer, Krystal Hamilton, Carson Roye and Brandon Brenner. As a

consequence, the marketers were inducing Providers to use only providers of medical

instrumentation and durable medical equipment associated with Defendant or related entities.

Plaintiff has the names of patients subject to such improper charging.

32.    One or more of the Providers constituting chiropractors prepared maximum

medical improvement reports for physicians without physicians seeing the patients themselves.

By way of example only, Andrew Garrett did so. Plaintiff has the names of patients subject to

such improper charging.

33.    One or more of the Providers has charged for therapy by patient technicians

outside the scope of their licensed practice. By way of example only, Wolski, Helsten, Dayian,

and Rodges billed for services that were provided by technicians but should have

been provided by physical therapists or chiropractors. Plaintiff has the names of patients subject

to such improper charging.

34.    One or more of the Providers has charged for the services of a nurse visit, under

CPT code 99211, but without providing the proper standard of care. By way of example only,

medical assistants were not taking vitals. By way of example only, Dugas, Wolski, Addison,

SECOND AMENDED COMPLAINT – Page 12

Crutchfield, Garrett and Helsten did so. Plaintiff has the names of patients subject to such improper charging.

35.    One or more of the Providers has charged for visits nearly every time FECA claimants are retrieving medical records or other documentation even when the documentation was not provided. By way of example only, when an FECA claimant came to retrieve records, it was billed under CPT code 99808 even though no new documentation was provided. By way of example only, Dugas, Wolski, Addison, Crutchfield, Garrett, Helsten, Kaufman, Ippolito and Podleski did so. Plaintiff has the names of patients subject to such improper charging.

36.    One or more of the Providers has overcharged chiropractor time by billing as new patient physician visits, CPT codes 99202, 99203, 99204, or 99205, and follow up office visits, under CPT codes 99212, 99213, 99214 or 99215. The result of this was that the amounts charged were significantly higher because the codes used were proper only for physicians, not chiropractors. By way of example only, Crutchfield, Garrett, Helsten, Kaufman, Dan and Podleski did so. Plaintiff has the names of patients subject to such improper charging.

37.    One or more of the Providers has provided blank medical preauthorization scripts to Plutus Health and given signature stamps to its owner, John Thomas, when the scripts should have been reviewed and signed by the treating physician. As a consequence, the Government was charged for preauthorization services resulting in more necessary therapy to FECA claimants by Plutus Health. The result of this was that the amounts billed were significantly higher than they should have been. By way of example only, Dugas, Wolski, Addison, Crutchfield, Garrett and Helsten did so. Plaintiff has the names of patients subject to such improper charging.

SECOND AMENDED COMPLAINT – Page 13

38.    One or more of the Providers has opened accelerated claims for FECA claimants in which the circumstances did not justify doing so. By way of example, Providers would open traumatic injury cases by CA-1 forms and occupational injuries by CA-2 forms when the patients did not have work-related traumatic injuries or were not working on the claimed injury date to get surgeries or other medical treatment or disability benefits covered that would otherwise not have been covered by the FECA. By way of example only, Wolski, Rogers, Beeman, Kaufman, Podleski, Neece, Ippolito, Cates, Garrett, Dugas and Helsten engaged in this practice. Plaintiff has the names of patients subject to such improper charging.

39.    One or more of the Providers made referrals to individuals or entities constituting medical specialists, hospitals, and/or imaging center(s) conditional on exclusive mutual referrals or payment of money by such entities or individuals to them. By way of example, Kaufman, Podleski, Neece, Batlle, Rove, Eubanks and James exclusively perform surgeries at hospitals with medical instrumentation provided by individuals or entities associated with Defendants and is compensated by such individuals or entities for such use. The Government has been charged for such medical instrumentation without disclosure of such facts. Plaintiff has the names of patients subject to such improper charging.

40.    One or more of the Providers made referrals of FECA claimants for surgery to a physician providing the same diagnosis for every such claimant topic even when circumstances did not justify the same diagnosis. By way of example only, Kaufman, Beeman, Dr. Podleski, Neece and Ippolito engaged in this improper practice. Plaintiff has the names of patients subject to such improper charging.

SECOND AMENDED COMPLAINT – Page 14

41.    One or more of the Providers made referrals of FECA claimants for surgery to a physician even if the injury the subject of the surgery was not properly covered by the FECA because not work-related. By way of example only, Wolski, Helsten, Dan, Garrett, Addison, Beeman and Rogers engaged in this improper practice. As a consequence, the Government paid certain claims it was not required to pay. Plaintiff has the names of patients subject to such improper charging.

42.    One or more of the Providers directed pharmaceutical scripts to be filled by one of the Southern Star Pharmacy entities for 90% of prescriptions. Wolski, Kaufman and Podleski, Helsten, Dayian, Garrett, Rogers and Rove engaged in this improper practice. Plaintiff has the names of patients subject to such improper charging.

43.    Dr. Klair administered neurostimulator treatment to FECA claimants, and to Medicare and Medicaid patients, even when such claimants and patients did not need such treatment. Plaintiff has the names of patients subject to such improper charging.

44.    Dr. Roye refers all patients to one or more of the Providers because his son works for one or more of the entity Defendants and his son becomes entitled to commissions with respect to pharmaceutical scripts or medical instrumentation with respect to such patients. Dr. Batlle refers all patients to his own neuromonitoring provider, owned by him, and charges the Government even where there is no clinical need for them to obtain services of that provider. Further, medical instrumentation manufactured or sold by Defendant, or individuals or entities owned or controlled by Defendant, or otherwise associated with Defendant, are only used in certain hospitals in which Providers have an ownership interest, and Defendant and related entities and one or more Providers are both paid for referring patients to such hospitals for

SECOND AMENDED COMPLAINT – Page 15

surgeries. Dr. Kaufman engaged in this practice. Plaintiff has the names of patients subject to such improper charging.

C.   Violation of the FCA, ADA and TLC

45.   Under the circumstances described in paragraphs 15 through 44, Plaintiff, while employed by Defendant, believed and understood that one or more of the Providers, with the knowledge of Defendant, submitted claims, or caused to be submitted claims, that were requests for payment or approval to the Government, or made, used, or caused to be made or used, claims to get money or property from the Government, which were false due to improper charges, upcoding, unbundling and providing for medically unnecessary treatment or other unlawful reason, with knowledge of their falsity. Also under the circumstances described in paragraphs 15 through 44, Plaintiff, while employed by Defendant, believed and understood that one or more of such the false claims were submitted by the Providers for payment approval to fiscal intermediaries of the Government, with knowledge of their falsity. Also under the circumstances described in paragraphs 15 through 44, Plaintiff, while employed by Defendant, believed and understood that the Providers' false submissions, and requests for payment had a natural tendency to influence, or be capable of influencing, the payment of funds to the Providers. Each submission to the Government by the Providers, with the knowledge of Defendant, for payment or approval, constituted a false representation and certification, both express and implied, and thereby represented a false or fraudulent record or statement and a false or fraudulent claim for payment, and that the falsity of these claims submitted by the Providers was material to the Government's decision to pay these claims and the false claims, knowingly submitted by the

Providers, with the knowledge of Defendant or one or more related entities, to the Government, were paid by the Government.

46.    Prior to the termination of her employment by Defendant on March 9, 2020, between June 2019 and November 2019, Plaintiff complained verbally or in writing to Dr. Wolski, Stowhas and Gove and attorneys for Defendant, Tom Dirkson and Matt Lawhon, of the illegality of charges of Providers and entities owned, controlled or managed by Defendant or otherwise associated with Defendant, with respect to FECA claimants.

D.    Discrimination and Retaliation in Violation of the ADA and TLC

47.    Prior to the termination of her employment with Defendant on March 9, 2020, Plaintiff, and in November 2019, suffered a sexual assault, including a rape, by an attorney engaged by Defendant, and suffered multiple adverse psychiatric effects of the assault and harassment for reporting it. These effects and such harassment rendered Plaintiff disabled or caused Defendant to regard Plaintiff as disabled. Plaintiff complained about such harassment and attempted to remain employed by Defendant, but after Plaintiff suffered a panic attack at work, Plaintiff sought medical leave in March 2020. After Plaintiff sought such a leave, Defendant subjected Plaintiff to retaliation by interference with her performance as a lay representative of claimants under FECA, terminated Plaintiff's employment and filed suit against her.

IV.    CAUSES OF ACTION

A.    COUNT ONE

THE FCA: 31 U.S.C. § 3730(h)

48.    All of the allegations set forth herein are incorporated herein by reference as if fully set forth at length.

49.    The FCA, 31 U.S.C. § 3730(h)(1) and (2), state in pertinent part:

In General --
Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

(2)    Relief --
Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the Government for the relief provided in this subsection.

50.    Plaintiff was subjected to one or more violations of § 3730(h) by Defendant and is accordingly entitled to relief to include back pay, two times the amount of back pay, interest on the back pay, front pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees.

B.    COUNT TWO

AMERICANS WITH DISABILITIES ACT

51.    All of the allegations set forth herein are incorporated herein by reference as if fully set forth at length.

SECOND AMENDED COMPLAINT – Page 18

52.     Plaintiff was subjected by Defendant to one or more violations of the Americans with Disabilities Act constituting unlawful discrimination or retaliation. On account of such violations, Plaintiff is entitled to recover from Defendant her backpay, front pay, compensatory damages, punitive damages, attorney's fees, prejudgment interest and costs of court.

C.     COUNT SIX

TEXAS LABOR CODE

53.     All of the allegations set forth herein are incorporated herein by reference as if fully set forth at length.

54.     Plaintiff was subjected by Defendant to one or more violations of the Texas Labor Code constituting unlawful discrimination or retaliation. On account of such violations, Plaintiff is entitled to recover from Defendant her backpay, front pay, compensatory damages, punitive damages, attorney's fees, prejudgment interest and costs of court.

V.     RELIEF REQUESTED

Plaintiff requests the following relief be imposed against Defendant:

(a)     That this Court award all relief against Defendant to which Plaintiff is entitled under §3730(h) of the FCA;

(b)     That this Court award all relief against Defendant to which Plaintiff is entitled under the Americans with Disabilities Act and the Texas Labor Code; and

(c)     That this Court award such other relief as it deems just, necessary and fair.

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,


/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
Texas Bar No. 08158100
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 379-0823
Email: reg@kilgorelaw.com

ATTORNEY FOR PLAINTIFF

SECOND AMENDED COMPLAINT – Page 20